Opinion by Judge WARDLAW; Dissent by Judge CALLAHAN.
OPINION
WARDLAW, Circuit Judge:
Appellees, nine homeless individuals living in the “Skid Row” district of Los Angeles, charge that the City of Los Angeles *1024 (the “City”) violated their Fourth and Fourteenth Amendment rights by seizing and immediately destroying their unabandoned personal possessions, temporarily left on public sidewalks while Appellees attended to necessary tasks such as eating, showering, and using restrooms. Finding a strong likelihood of success on the merits of these claims, the district court enjoined the City from confiscating and summarily destroying unabandoned property in Skid Row. The narrow injunction bars the City from:
1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and
2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.
Lavan v. City of Los Angeles, 797 F.Supp.2d 1005, 1020 (C.D.Cal.2011).
The district court expanded upon the great leeway the City retains to protect public health and safety, noting: “The City [is] able to lawfully seize and detain property, as well as remove hazardous debris and other trash; issuance of the injunction ... merely prevents the City] from unlawfully seizing and destroying personal property that is not abandoned without providing any meaningful notice and opportunity to be heard.” Id. at 1019.
In this appeal, the City does not challenge the scope of the injunction, nor does it ask us to modify its terms; instead, the City argues only that the district court applied the wrong legal standard in evaluating Appellees’ claims.[1] We conclude that the Fourth and Fourteenth Amendments protect homeless persons from government seizure and summary destruction of their unabandoned, but momentarily unattended, personal property.
I. FACTS AND PROCEDURAL BACKGROUND
The facts underlying this appeal are largely undisputed.[2] Appellees are homeless persons living on the streets of the Skid Row district of Los Angeles. Skid Row’s inhabitants include the highest concentration of homeless persons in the City of Los Angeles; this concentration has only increased in recent years.[3] See Los Angeles Homeless Services Authority, 2011 Greater Los Angeles Homeless Count Report, available at http://www.lahsa.org/ docs/2011-Homeless-CounVHCll-DetailedGeography-Report-FINALJPDF. Appellees occupy the sidewalks of Skid Row pursuant to a settlement agreement we approved in 2007. See Jones v. City of *1025 Los Angeles, 444 F.3d 1118 (9th Cir.2006), vacated due to settlement, 505 F.3d 1006 (9th Cir.2007). The settlement agreement limits the City’s ability to arrest homeless persons for sleeping, sitting, or standing on public streets until the City constructs 1250 units of permanent supportive housing for the chronically homeless, at least 50 percent of which must be located within Skid Row or greater downtown Los Angeles. See Settlement Agreement, Jones v. City of Los Angeles, No. 03-CV-01142 (C.D.Cal. Sept. 15, 2008).
Like many of Skid Row’s homeless residents, Appellees stored their personal possessions — including personal identification documents, birth certificates, medications, family memorabilia, toiletries, cell phones, sleeping bags and blankets — in mobile containers provided to homeless persons by social service organizations. Appellees Tony Lavan, Caterius Smith, Willie Vassie, Shamal Ballantine, and Reginald Wilson packed their possessions in EDAR mobile shelters.[4] Appellees Ernest Seymore, Lamoen Hall, and Byron Reese kept their possessions in distinctive carts provided by the “Hippie Kitchen,” a soup kitchen run by the Los Angeles Catholic Worker.[5]
On separate occasions between February 6,.2011 and March 17, 2011, Appellees stepped away from their personal property, leaving it on the sidewalks, to perform necessary tasks such as showering, eating, using restrooms, or attending court. Appellees had not . abandoned their property, but City employees nonetheless seized and summarily destroyed Appellees’ EDARs and carts, thereby permanently depriving Appellees of possessions ranging from personal identification documents and family memorabilia to portable electronics, blankets, and shelters. See Lavan, 797 F.Supp.2d at 1013-14. The City did not have a good-faith belief that Appellees’ possessions were abandoned when it destroyed them. Indeed, on a number of the occasions when the City seized Appellees’ possessions, Appellees and other persons were present, explained to City employees that the property was not abandoned, and implored the City not to destroy it. Id. at 1013. Although “the City was in fact notified that the property belonged to Lamoen Hall and others, ... when attempts to retrieve the property were made, the City took it and destroyed it nevertheless.” Id. at 1014.
The City does not deny that it has a policy and practice of seizing and destroying homeless persons’ unabandoned possessions. Nor is the practice new: The City was previously enjoined from engaging in the precise conduct at issue in this appeal. See Justin v. City of Los Angeles, No. 00-CV-12352, 2000 WL 1808426, at *13 (C.D.Cal. Dec. 5, 2000) (granting a temporary restraining , order barring the City from, among other things, “[e]onfis *1026 eating the personal property of the homeless when it has not been abandoned and destroying it without notice”). The City maintains, however, that its seizure and disposal of items is authorized pursuant to its enforcement of Los Angeles Municipal Code (“LAMC”) § 56.11, a local ordinance that provides that “[n]o person shall leave or permit to remain any merchandise, baggage or any article of personal property upon any parkway or sidewalk.”
On April 5, 2011, Appellees sued the City under 42 U.S.C. § 1983, claiming that the City’s practice of summarily confiscating and destroying the unabandoned possessions of homeless persons living on Skid Row violated the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. On April 18, 2011, Appellees filed an ex parte application for a temporary restraining order (the “TRO”), seeking an injunction preventing the City from seizing and destroying Appellees’ possessions without notice.
On April 22, 2011, the district court granted Appellees’ application for the TRO, concluding that “Plaintiffs have sufficiently established a likelihood of success on the merits for, at the least, their Fourth Amendment and Fourteenth Amendment claims against the City,” that the City’s conduct, unless enjoined, would irreparably injure Plaintiffs, and that the TRO served the public interest, as it allowed the City to “lawfully seize and detain property, as opposed to unlawfully seizing and immediately destroying property.” Lavan v. City of Los Angeles, No. 11-CV-2874, 2011 WL 1533070, at *5-6 (C.D.Cal. Apr. 22, 2011). The district court fashioned an order encompassing all unabandoned property on Skid Row, reasoning that “it would likely be impossible for the City to determine whose property is being confiscated — i.e. whether it is one of the named Plaintiffs or another homeless person.” Id. at *4. The terms of the TRO bar the City from:
1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and
2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.
Id. at *7. The City is also “directed to leave a notice in a prominent place for any property taken on the belief that it is abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner.” Id.
On June 23, 2011, the district court issued a preliminary injunction (the “Injunction”) on the same terms as the TRO. After weighing the evidence before it, the district court found that the Appellees had “clearly shown that they will likely succeed in establishing that the City seized and destroyed property that it knew was not abandoned,” 797 F.Supp.2d at 1014-1015, and held that Appellees had shown a strong likelihood of success on the merits of their claims that the City violated their Fourth Amendment and Fourteenth Amendment rights, id. at 1016, 1019. Explaining that Appellees “have a legitimate expectation of privacy in their property,” the district court further held that “[t]he property of the homeless is entitled to Fourth Amendment protection.” Id. at 1011, 1016. The district court also concluded that Appellees “personal possessions, perhaps representing everything they own, must be considered ‘property’ for purposes of [Fourteenth Amendment] due process analysis.” Id. at 1016. Because Appellees had shown a strong likelihood of success on their claims that the seizure and destruction of their property *1027 was neither reasonable under the Fourth Amendment nor comported With procedural due process, the district court enjoined the City from continuing to engage in its practice of summarily destroying Appellees’ unattended personal belongings.
The district court made clear that under the terms of the injunction, “[t]he City [is] able to lawfully seize and detain property, as well as remove hazardous debris and other trash.” Id. at 1019. It emphasized that “issuance of the injunction ,.. merely prevents the City] from unlawfully seizing and destroying personal property that is not abandoned without providing any meaningful notice and opportunity to be heard.” Id. This appeal followed.
II. JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction over the district court’s entry of a preliminary injunction under 28 U.S.C. § 1292(a)(1), and review the grant of a preliminary injunction for an abuse of discretion. Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir.2003) (en banc) (per curiam). “A preliminary ‘injunction will be reversed only if the district court relied on an erroneous legal premise or abused its discretion.’ ” Gregorio T. v. Wilson, 59 F.3d 1002, 1004 (9th Cir.1995) (quoting Sports Form, Inc. v. United Press Int’l, 686 F.2d 750, 752 (9th Cir.1982)). In reviewing the grant of a preliminary injunction, “we do not review the underlying merits of the case.” Id.
III. DISCUSSION
The City’s only argument on appeal is that its seizure and destruction of Appellees’ unabandoned property implicates neither the Fourth nor the Fourteenth Amendment. Therefore, the City claims, the district court relied on erroneous legal premises in finding a likelihood of success on the merits. Because the unabandoned property of homeless persons is not beyond the reach of the protections enshrined in the Fourth and Fourteenth Amendments, we affirm the district court.
A. The Fourth Amendment’s Protection Against Unreasonable Seizures
The City argues that the Fourth Amendment does not protect Appéllees from the summary seizure and destruction of their unabandoned personal property. It bases its entire theory on its view that Appellees have no legitimate expectation of privacy in property left unattended on a public sidewalk in violation of LAMC § 56.11. Relying on Justice Harlan’s concurrence in Katz v. United States, the City asserts that the Fourth Amendment' protects only persons who have both a subjectively and an objectively reasonable expectation of privacy in their property. 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring). As the Supreme Court has recently made very clear in United States v. Jones, 565 U.S. -, 132 S.Ct. 945, 950, 181 L.Ed.2d 911 (2012), however, the City’s view entirely misapprehends the appropriate Fourth Amendment inquiry, as well as the fundamental nature of the interests it protects. The reasonableness of Appellees’ expectation of privacy is irrelevant as to the question before us: whether the Fourth Amendment protects Appellees’ unabandoned property from unreasonable seizures.
The Fourth Amendment “protects two types of expectations, one involving ‘searches,’ the other ‘seizures.’ A ‘search’ occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A ‘seizure’ of property occurs when there is some meaningful interference with an individual’s possessory interests in that property.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Appellees need not show a *1028 reasonable expectation of privacy to enjoy the protection of the Fourth Amendment against seizures of their unabandoned property. Although the district court determined that Appellees had a reasonable expectation of privacy in their EDARs and carts, we need not decide that question because the constitutional standard is whether there was “some meaningful interference” with Plaintiffs’ possessory interest in the property.[6]
To the extent that Justice Harlan’s Katz concurrence generated the mistaken impression that the Fourth Amendment protects only privacy interests, the Supreme Court has clarified that the Fourth Amendment protects possessory and liberty interests even when privacy rights are not implicated. Soldal v. Cook County, 506 U.S. 56, 63-64 & n. 8, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). As the Court explained, while Katz and its progeny may have shifted the emphasis in Fourth Amendment law from property to privacy, “[tjhere was no suggestion that this shift in emphasis had snuffed out the previously recognized protection for property under the Fourth Amendment.” Id. at 64, 113 S.Ct. 538. Indeed, even in the search context, where privacy is the principal protected interest, the Supreme Court has recently reiterated that a reasonable expectation of privacy is not required for Fourth Amendment protections to apply because “Fourth Amendment rights do not rise or fall with the Katz formulation.” Jones, 565 U.S. at -, 132 S.Ct. at 950.
Following Soldal, we recognized that a reasonable expectation of privacy is not required to trigger Fourth Amendment protection against seizures. In Miranda v. City of Cornelius, 429 F.3d 858, 862 n. 2 (9th Cir.2005), for example, the plaintiffs admitted that they had no reasonable expectation of privacy in their parked car, but they nevertheless challenged the city’s impoundment of the vehicle as an unreasonable seizure. We held that the seizure was subject to the Fourth Amendment’s reasonableness standard because “[tjhe Fourth Amendment protects against unreasonable interferences in property inter *1029 ests regardless of whether there is an invasion of privacy.” Id. at 862 (citing Soldal). Other circuits are in accord. See United States v. Paige, 136 F.3d 1012, 1021 (5th Cir.1998) (“The Supreme Court recently made clear that the protection afforded by the Fourth Amendment extends to an individual’s possessory interests in property, even if his expectation of privacy in that property has been completely extinguished.”) (citing Soldal); Lenz v. Winburn, 51 F.3d 1540, 1550 n. 10 (11th Cir.1995) (“It is true that a possessory interest is all that is needed for the Fourth Amendment’s reasonableness requirement to apply to a seizure.”) (citing Soldal); Bonds v. Cox, 20 F.3d 697, 702 (6th Cir.1994) (“[0]ur finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our conclusion that Bonds has standing to challenge the seizure of her property.”).
Thus the dissent’s nearly exclusive focus on the Katz “reasonable expectation of privacy” standard is misguided. We need not make any conclusion as to expectations of privacy because that is not the standard applicable to a “seizure” analysis. Moreover, as Justice Scalia made abundantly clear in Jones, even in the “search” context, the Katz test “did not narrow the Fourth Amendment’s scope,” Jones, 565 U.S. at -, 132 S.Ct. at 951, but was “added to, not substituted for, the common-law trespassory test.” Id. at -, 132 S.Ct. at 952 (emphasis in original). Therefore, even if we were to analyze the reasonableness of the City’s search of Plaintiffs’ belongings, we would still apply the Fourth Amendment’s requirement that the search be reasonable — irrespective of any privacy interest — because the City searched Plaintiffs’ “persons, houses, papers, [or] effects,” id. at 950. See U.S. v. Duens, 691 F.3d 1070, 1080-81 (9th Cir.2012) (explaining the relationship between the Katz “expectation of privacy” test and the traditional scope of the Fourth Amendment).[7]
Even if we were to assume, as the City maintains, that Appellees violated LAMC § 56.11 by momentarily leaving their unabandoned property on Skid Row sidewalks, the seizure and destruction of Appellees’ property remains subject to the Fourth Amendment’s reasonableness requirement. Violation of a City ordinance does not vitiate the Fourth Amendment’s protection of one’s property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment.[8]
*1030 Indeed, the Supreme Court has recognized protected possessory interests even in contraband: In United States v. Jacobsen, for example, the Court found that the government’s testing of illegal cocaine (which resulted in the destruction of a portion of the cocaine) was a “seizure” that “affect[ed] respondents’ possessory interests protected by the [Fourth] Amendment, since by destroying a quantity of the powder it converted what had been only a temporary deprivation of possessory interests into a permanent one.” 466 U.S. at 124-125, 104 S.Ct. 1652. Moreover, the Fourth Amendment protected the cocaine from unreasonable seizures despite the lack of any reasonable expectation of privacy in concealing the contraband nature of the powder. See id. at 123, 104 S.Ct. 1652 (“Congress has decided ... to treat the interest in ‘privately’ possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine ... compromises no legitimate privacy interest.”).
Here, by seizing and destroying Appellees’ unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees’ possessory interests in that property. No more is necessary to trigger the Fourth Amendment’s reasonableness requirement. Although the district court based its holding on a finding that Appellees had a reasonable expectation of privacy in their seized personal effects — a finding that is unnecessary to the proper analysis in this case — it correctly held that the Fourth Amendment’s protections extend to Appellees’ unabandoned property. The court therefore applied the proper legal standard for determining whether Appellees had shown a likelihood of success on the merits: “The question then becomes whether the City, in seizing [Appellees’] property, acted reasonably under the Fourth Amendment.” Lavan, 797 F.Supp.2d at 1013. Thus, the district court properly subjected the City’s actions to the Fourth Amendment’s reasonableness requirement, even if the City was acting to enforce the prohibitions in LAMC § 56.11. See Miranda v. City of Cornelius, 429 F.3d at 864 (“We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment. ...”).
The district court properly balanced the invasion of Appellees’ possessory interests in their personal belongings against the City’s reasons for taking the property to conclude that Appellees demonstrated a strong likelihood of success on the merits of their claim that by collecting and destroying Appellees’ property on the spot, the City acted unreasonably in violation of the Fourth Amendment. The district court was correct in concluding that even if the seizure of the property would have been deemed reasonable had the City held it for return to its owner instead of immediately destroying it, the City’s destruction of the property rendered the seizure unreasonable. See Jacobsen, 466 U.S. at 124-125, 104 S.Ct. 1652 (“[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment’s prohibition on ‘unreasonable seizures.’ ”); see also San Jose Charter of Hells Angels Motorcycle Club v. San Jose, 402 F.3d 962, 975 (9th Cir.2005) (“The destruction of property by state offi *1031 rials poses as much of a threat, if not more, to people’s right to be secure in their effects as does the physical taking of them.”) (internal quotation marks and citations omitted).
The City does not — and almost certainly could not — argue that its summary destruction of Appellees’ family photographs, identification papers, portable electronics, and other property was reasonable under the Fourth Amendment; it has instead staked this appeal on the argument that the Fourth Amendment simply does not apply to the challenged seizures. We reject the City’s invitation to impose this unprecedented limit on the Fourth Amendment’s guarantees.
B. The Fourteenth Amendment’s Due Process Requirement
The Fourteenth Amendment provides that no State shall “deprive any person of life, liberty, or property, without due process of law.” U.S. CONST. amend. XIV, § 1. “Any significant taking of property by the State is within the purview of the Due Process Clause.” Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). “Application of this prohibition requires the familiar two-stage analysis: We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment’s protection of ‘life, liberty or property’; if protected interests are implicated, we then must decide what procedures constitute ‘due process of law.’ ” Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).
Let us be clear about the property interest at stake in this appeal: The district court did not recognize, and we do not now address, the existence of a constitutionally-protected property right to leave possessions unattended on public sidewalks. Instead, the district court correctly recognized that this case concerns the most basic of property interests encompassed by the due process clause: Appellees’ interest in the continued ownership of their personal possessions.
The City argues that the district court erred in holding that Appellees’ “personal possessions, perhaps representing everything they own, must be considered ‘property’ for purposes of ... due process analysis,” Lavan, 797 F.Supp.2d at 1016. The City maintains that “no constitutionally protected property interest is implicated by the City’s purported conduct” because “there is no law establishing an individual’s constitutionally protected property interest in unattended personal property left illegally on the public sidewalk.” Therefore, the City contends, no process is required before the City permanently deprives Appellees of their unattended possessions.
To determine whether Appellees have a protected property interest in the continued ownership of their unattended possessions, we look to “existing rules or understandings that stem from an independent source such as state law-rules or understandings.” Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), While “[t]he Court has ... made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money,” this appeal concerns only the core property interest that derives from actual ownership of chattels. Id. at 571-572, 92 S.Ct. 2701. California law recognizes the right of ownership of personal property, a right that is held by “[a]ny person, whether citizen or alien.” Cal. Civ.Code §§ 655, 663, 671. It is undisputed that Appellees owned their possessions and had not abandoned them; therefore, Appellees maintained a protected interest in their personal property. Cf. Nevada Dept. of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir.2011) (“Nevada recog *1032 nizes ‘personal property,’ which includes ‘money, goods, [and] chattels.’ See Nev. Rev.Stat. §§ 10.045, 10.065. As Downs’s typewriter constituted a chattel, Downs had a property interest in it.”).
As we have repeatedly made clear, “[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking.” Clement v. City of Glendale, 518 F.3d 1090, 1093 (9th Cir.2008). This simple rule holds regardless of whether the property in question is an Escalade or an EDAR, a Cadillac or a cart. The City demonstrates that it completely misunderstands the role of due process by its contrary suggestion that homeless persons instantly and permanently lose any protected property interest in their possessions by leaving them momentarily unattended in violation of a municipal ordinance. As the district court recognized, the logic of the City’s suggestion would also allow it to seize and destroy cars parked in no-parking zones left momentarily unattended.
Even if Appellees had violated a city ordinance, their previously-recognized property interest is not thereby eliminated. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (“[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement.”). Even if the City had seized Appellees’ possessions in accordance with the Fourth Amendment, which it did not, due process requires law enforcement “to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return.” City of West Covina v. Perkins, 525 U.S. 234, 240, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). And even if LAMC § 56.11 provided for forfeiture of property, which it does not, the City is required to provide procedural protections before permanently depriving Appellees of their possessions. See Greene, 648 F.3d at 1019 (“An agency ... violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures of property ‘[w]ithout underlying [statutory] authority and competent procedural protections.’ ”) (quoting Vance v. Barrett, 345 F.3d 1083, 1090 (9th Cir.2003)).
Because homeless persons’ unabandoned possessions are “property” within the meaning of the Fourteenth Amendment, the City must comport with the requirements of the Fourteenth Amendment’s due process clause if it wishes to take and destroy them. See United States v. James Daniel Good Real Prop., 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (“Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.”). The City admits that it failed to provide any notice or opportunity to be heard for Tony Lavan and other Appellees before it seized and destroyed their property. The City’s decision to forego any process before permanently depriving Appellees of protected property interests is especially troubling given the vulnerability of Skid Row’s homeless residents: “For many of us, the loss of our personal effects may pose a minor inconvenience. However, ... the loss can be devastating for the homeless.” Pottinger v. City of Miami, 810 F.Supp. 1551, 1559 (S.D.Fla.1992). The City does not argue, nor could it, that the district court erred in holding that the City’s “practice of on-the-spot destruction of seized property.... presents an enormous risk of erroneous deprivation, which could likely be mitigated by certain safeguards such as adequate notice and a *1033 meaningful opportunity to be heard.” Lavan, 797 F.Supp.2d at 1017-18.
We reject the City’s suggestion that we create an exception to the requirements of due process for the belongings of homeless persons. The district court did not abuse its discretion when it found a likelihood of success on Appellees’ Fourteenth Amendment claims, as the City admits it failed utterly to provide any meaningful opportunity to be heard before or after it seized and destroyed property belonging to Skid Row’s homeless population.
IV. CONCLUSION
This appeal does not concern the power of the federal courts to constrain municipal governments from addressing the deep and pressing problem of mass homelessness or to otherwise fulfill their obligations to maintain public health and safety. In fact, this court would urge Los Angeles to do more to resolve that problem and to fulfill that obligation. Nor does this appeal concern any purported right to use public sidewalks as personal storage facilities. The City has instead asked us to declare that the unattended property of homeless persons is uniquely beyond the reach of the Constitution, so that the government may seize and destroy with impunity the worldly possessions of a vulnerable group in our society. Because even the most basic reading of our Constitution prohibits such a result, the City’s appeal is DENIED.

.Public critics of the district court's ruling have mischaracterized both the breadth of the district court’s order and the substance of the City’s appeal. See, e.g., Carol Schatz, "Enabling homelessness on L.A.’s skid row,” LA. Times, April 9, 2012; Estela Lopez, "Skid row: Hoarding trash on sidewalks isn’t a right,” LA. Times, Feb. 28, 2012, available at http://opinion.latimes.com/opinionla/2012/02/ skid-row-trash-sidewalks-blowback.html. The injunction does not require the City to allow hazardous debris to remain on Skid Row, nor does the City quibble with the contours of the order. Rather, the City seeks a broad ruling that it may seize and immediately destroy any personal possessions, including medications, legal documents, family photographs, and bicycles, that are left momentarily unattended in violation of a municipal ordinance.

. While the City disputed many facts before the district court, it "do[es] not challenge the district court’s factual findings” in this appeal.

. A more comprehensive description of the circumstances surrounding the lives of homeless persons living on Skid Row is set forth in Jones v. City of Los Angeles, 444 F.3d 1118, 1121-23 (9th Cir.2006), vacated due to settlement, 505 F.3d 1006 (9th Cir.2007).

. EDARs are small, collapsible mobile shelters provided to homeless persons by Eveiyone Deserves a Roof, a nonprofit organization. EDARs are intended to address the chronic shortage of housing faced by homeless persons in Los Angeles. Former Los Angeles City Mayor Richard Riordan spent the night of Saturday, November 6, 2010 in an EDAR on Skid Row to demonstrate how the shelters could be used by the homeless population residing there'. See http:// losangeles.cbslocal.com/2010/11/06/richardriordan-volunteers-to-spend-night-with- . homeless/.

. The Los Angeles Catholic Worker is a lay organization founded in 1970 to aid the poor and homeless of Skid Row. The organization operates a soup kitchen and hospitality house for the homeless, and provides meals, blankets, raincoats, and carts to homeless persons. See generally Jeff Dietrich, "Homeless enablers — and proud of it," L.A. Times, April 16, 2012, available at http://www.latimes.com/ news/opinion/opinion-la/la-ol-homelessskidrow-blowback-20120413,0,219945 0.story.

. Although the question is not before us, we note that Appellees' expectation of privacy in their unabandoned shelters and effects may well have been reasonable. When determining whether an expectation of privacy is reasonable, "we must keep in mind that the test of legitimacy is ... whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.” California v. Ciraolo, 476 U.S. 207, 212, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (quotation omitted). In Silverman v. United States, the Court explained the “very core” of the Fourth Amendment:
A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizable hunk of liberty — worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man’s castle.
365 U.S. 505, 511 n. 4, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) (quoting United States v. On Lee, 193 F.2d 306, 315-16 (2d Cir.1951) (Frank, J., dissenting)). As our sane, decent, civilized society has failed to afford more of an oasis, shelter, or castle for the homeless of Skid Row than their EDARs, it is in keeping with the Fourth Amendment's "very core” for the same society to recognize as reasonable homeless persons’ expectation that their EDARs are not beyond the reach of the Fourth Amendment. See generally State v. Mooney, 218 Conn. 85, 588 A.2d 145, 161 (1991) ("The interior of [the homeless defendant’s duffel bag and cardboard box] represented, in effect, the defendant’s last shred of privacy from the prying eyes of outsiders, including the police. Our notions of custom and civility, and our code of values, would include some measure of respect for that shred of privacy, and would recognize its assertion as reasonable under the circumstances of this case.”).

. The assumption that the Katz privacy analysis applies in the seizure context, and that it is a standard that must be met in every Fourth Amendment search or seizure case, permeates the dissent's reasoning. See, for example, Section IIB of the dissent. Because the Supreme Court soundly rejected that assumption in Jones, the dissent's reasoning, which essentially echoes the City’s, is, at best, highly questionable.

. The dissent’s analogy between the factual scenario presented by this case and that of a government official's seizure of a traveler’s unattended bag in an airport terminal or train station is inapt. The City has not challenged the district court’s clearly correct conclusion that the City’s immediate destruction of Plaintiffs' unabandoned property was unreasonable. Even if the City had raised this issue on appeal, however, the dissent’s suggestion that the government has the same interest in destroying EDARs and homeless persons' family photographs and identification papers found on public sidewalks as it does in destroying suspicious unattended luggage discovered in transportation hubs fails to recognize the unique nature of the security risks that exist at airports and train stations. The Fourth Amendment remains applicable at such transportation hubs; the nature of the security risks there (and, similarly, at border crossings) gives the government broader leeway in the reasonableness standard. As far as we are aware, Skid Row has never been the target of a terrorist attack, and the City makes *1030 no argument that the property it destroyed was suspicious or threatening. And, in any event, the very injunction that the City is challenging in this appeal expressly allows the City to act immediately to remove and destroy threats to public health or safety.