In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-1479

DAWN NOWLIN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

J. B. PRITZKER, Governor of Illinois,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:20-CV-1229 — **James E. Shadid**, *Judge*.

———————————

ARGUED DECEMBER 6, 2021— DECIDED MAY 20, 2022

———————————

Before RIPPLE, WOOD, and KIRSCH, *Circuit Judges*.

WOOD, *Circuit Judge*. When the COVID-19 pandemic hit
the United States, public authorities all over the country re-
sponded with emergency measures designed (they hoped) to
protect the public health. But those efforts were not uniformly
welcomed: countless people have sued in the hope of setting
them aside. The story in Illinois is typical. In an effort to curb
the spread of COVID-19, Governor J. B. Pritzker issued a se-
ries of executive orders. In the early months of the pandemic,

these orders required Illinois residents to shelter in place at their residences, compelled "non-essential" businesses temporarily to cease or reduce their operations, and prohibited gatherings of more than 10 people (a limit later increased to 50 people). See, *e.g.*, Exec. Orders Nos. 2020-32, 2020-38, 2020-43, available at State of Illinois Coronavirus Response, Executive Orders, https://coronavirus.illinois.gov/resources/executive-orders.html. Believing that these orders violated numerous provisions of the U.S. Constitution, several individual plaintiffs joined with some Illinois businesses and sued the Governor in his official capacity.

After granting Plaintiffs one opportunity to amend their complaint, the district court found that they lacked standing to sue. The court also concluded that it would be futile to allow a second amendment because, even if it had erred about the existence of a justiciable case or controversy, Plaintiffs did not, and could not, state a claim upon which relief could be granted. Accordingly, it dismissed Plaintiffs' complaint with prejudice and denied leave to file a second amended complaint. See FED. R. CIV. P. 12(b)(1), 12(b)(6), 15(a)(2). Plaintiffs now appeal.

With respect to five out of six counts, we too find that Plaintiffs have not satisfied the criteria for standing to sue established by Article III of the Constitution. The remaining count attempts to state a claim under the Fifth Amendment's Takings Clause, as applied to the states through the Fourteenth Amendment. The business plaintiffs may have squeaked by the standing bar for that theory. Nonetheless, as the district court found, they have not stated a claim upon which relief can be granted. We therefore affirm the district court's dismissal of the amended complaint, although we modify the dismissal to be without prejudice as to the first five

counts. See *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 577, 581–82 (7th Cir. 2019). Because we see no abuse of discretion in the court's denial of leave to file a second amended complaint, we affirm that ruling as well.

**I**

Plaintiffs' complaint against the Governor alleges a cornucopia of constitutional violations under the First Amendment's Free Exercise, Free Speech, and Freedom of Assembly Clauses (Counts I to III); the Fourteenth Amendment's Due Process and Equal Protection Clauses (Counts IV and V); and the Fifth Amendment's Takings Clause (Count VI). By way of redress, they seek nominal and compensatory damages, fees and costs, and injunctive and declaratory relief against enforcement of the challenged executive orders.

Governor Pritzker moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). He argued that Plaintiffs failed to allege the type of concrete and particularized injuries required to establish standing to sue in a federal court. And in any event, he contended, Plaintiffs failed to state claims upon which relief could be granted. The district court granted the Governor's motion, but it also granted Plaintiffs leave to amend the complaint. In taking the latter step, the court alerted Plaintiffs to the deficiencies it perceived in the initial version. It noted, for example, that certain claims appeared to be moot, while others were apparently barred by sovereign immunity.

Plaintiffs tried to cure these deficiencies by adding a new, though similarly vague, allegation, which they repeated throughout their amended complaint, one time for each

individual plaintiff. See *infra* II.A (quoting and discussing the allegation). The Governor moved to dismiss the amended complaint, and the district court granted his request, dismissing this time with prejudice. It held that Plaintiffs failed adequately to allege Article III standing; that their free-exercise claims were moot because the Governor's orders have exempted the free exercise of religion since May 28, 2020, almost a month *before* Plaintiffs filed suit; and that their claims for monetary damages could not proceed because they had sued the Governor in his official capacity. The court also refused to allow Plaintiffs to amend a second time, reasoning that this would be a futile gesture.

## II

### A

We evaluate *de novo* both a dismissal for lack of Article III standing, *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020), and one for failure to state a claim upon which relief can be granted, *United Central Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

Because Article III standing is jurisdictional, we begin (and, as it happens, largely end) there. Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "cases or controversies." U.S. Const. art. III. To ensure that this limitation is respected, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

At issue here is the injury-in-fact requirement. An injury-in-fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id*. (internal quotation marks omitted). To be "concrete," the asserted injury must be "'real,' and not 'abstract.'" *Id*. at 340 (citations omitted).

With respect to Counts I through V, we agree with the district court that Plaintiffs failed to plead concrete and particularized injuries-in-fact. Their initial complaint contained only vague allegations such as this: "Plaintiffs were subjected to severe restrictions on their religious liberty between March 20, 2020 and May 28, 2020"; "[b]etween March 20, 2020, and the present, these orders restricted Plaintiffs[] from their constitutional right to the freedom of speech and the freedom to peaceably assemble"; "the Executive Orders … mandate that Plaintiffs stay at home, impinging on their fundamental right[] to … travel"; and "Defendant Pritzker's executive orders … discriminate against the Plaintiffs' freedom of speech, and assembly … providing favored status to other political, atheist, agnostic, socialist, and communist protesters including but not limited to Antifa."

Version 1 of the complaint did not contain a single allegation that was specific to a particular plaintiff or that described a concrete harm. It did not, for example, allege anything about any given plaintiff's inability to attend a specified religious ceremony, or to express a viewpoint at a certain time, or to gather with others on a specific occasion. Far from being concrete and particular, Plaintiffs' allegations were abstract and general.

When presented with the opportunity to cure these defi-
ciencies, Plaintiffs introduced only one new allegation, which
they repeated twelve times in their amended complaint (once
for each individual plaintiff):

> The violations of the defendant discussed herein under
> the First, Fifth and Fourteenth Amendments have per-
> sonally and individually affected [the specified plain-
> tiff] in that she has lived in fear for her safety from re-
> prisals and prosecution and fears that her inalienable
> rights have been removed with no end in sight.

This allegation is no less generalized or abstract than the
allegations in the initial complaint. Such a bare assertion of
harm—unsupported by any concrete details and tethered to
no specific plaintiff—does not satisfy the constitutional re-
quirement of a concrete and particularized injury-in-fact.
With respect to Counts I through V, Plaintiffs failed to plead
Article III standing.

Count VI, which pertains only to the Businesses, requires
a slightly more nuanced analysis. Reading the amended com-
plaint generously, we see a glimmer of concreteness for the
Takings claim. The Businesses alleged, for example, that they
"stand on the precipice of economic collapse as a direct result
of the actions taken by Governor Pritzker." Their allegation of
financial injury, supposedly brought about by the Governor's
orders to cease operations, may squeak by the injury-in-fact
requirement. That is as far as the Businesses can go, however,
as this just moves us to the question whether they have stated
a Takings claim for purposes of Rule 12(b)(6).[1] In order to

---

[1] Because the Businesses seek declaratory relief in addition to dam-
ages, we need not reach the question whether sovereign immunity bars

answer that question, we must ascertain whether they pleaded "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (internal citations omitted). The quintessential taking is "a direct government appropriation or physical invasion of private property." *Id.* at 537; see also *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427 (1982). But there is also another variety, which arises where "government regulation of private property [is] so onerous that its effect is tantamount to a direct appropriation." *Lingle*, 544 U.S. at 537. Such regulatory takings also fall within the scope of the Fifth Amendment. See *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("[I]f regulation goes too far it will be recognized as a taking.").

The Businesses do not allege any physical invasion or direct appropriation of their property. Rather, they contend that the restrictions imposed on them by the Governor's orders constituted regulatory takings. To state a regulatory-taking claim, they needed plausibly to allege that the Governor's orders deprived them of all or a significant part of the economically beneficial use of the property. *Lucas v. S.C. Coastal*

---

their Takings claim. Under the doctrine of constitutional avoidance, we proceed only with a Rule 12(b)(6) analysis, which is necessary because prospective relief is sought and sufficient for the reasons discussed above.

*Council,* 505 U.S. 1003, 1016–17 & n.7 (1992); see also *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (whether a regulatory taking has occurred depends on several factors, including "[t]he economic impact of the regulation on the claimant[,] … the extent to which the regulation has interfered with distinct investment-backed expectations," and the "character of the governmental action").

Our examination of the amended complaint convinces us that Plaintiffs have not met the demanding test for alleging a regulatory taking. In keeping with their general approach, Plaintiffs allege broadly that "[t]he Executive Orders … deprived Plaintiff Businesses … of all economically beneficial use of their property" and that "the Defendant did not provide compensation for those who suffered substantial—and perhaps total—diminution of value in their property interest as a result."

"While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The Businesses have asserted legal conclusions, but they have not supported those conclusions with factual allegations that plausibly suggest that the Governor's orders constituted regulatory takings. How much money did they lose? How long was each Business closed? Did one or more of them use its property in other, albeit less lucrative, ways? We don't know. Allegations such as "Plaintiff Businesses were unable to open for business[]" and "Plaintiffs stand on the precipice of economic collapse" express conclusions, not facts that would permit an inference of the total or near-total deprivation of use or value required by *Lucas* and *Penn Central*.

As we recently noted in a different but related context, while the preferred or intended use of many business properties was limited or even prohibited by the Governor's COVID orders, those orders did not deprive property owners of all uses to which their premises might be put. See *Sandy Point Dental, P.C., et al. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021). Like the plaintiffs in *Sandy Point*, the Businesses were free to make other uses of their properties consistent with the closure orders. See *id.* That such uses would not have been their preferred or most profitable uses does not mean that the closure orders effected a regulatory taking. This complaint fails to move the needle from the possible to the plausible with respect to the alleged Takings claim. It thus fails to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6).

B

The district court denied Plaintiffs' request to amend the complaint a second time on grounds of futility. As the Governor notes, ordinarily we review a district court's denial of leave to amend a complaint for an abuse of discretion. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015). Nonetheless, "when the basis for denial is futility, we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim. Accordingly, our review for abuse of discretion of futility-based denials includes *de novo* review of the legal basis for the futility." *Id*. (citations omitted).

For purposes of assessing the court's decision to refuse further amendments, we take a quick look at the question whether Plaintiffs had any prospect of stating a claim under any of the counts. The answer, as we briefly explain, is no.

With respect to the free-exercise claim (Count I), we already have considered similar challenges to the Governor's orders and concluded in a preliminary ruling that they pass constitutional muster. See *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 346–47 (7th Cir. 2020). We later disposed of *Elim* on the ground that the passage of time had drained the litigation of all impact, even if it was not technically moot. The same is true here. Similarly, the free-speech and free-assembly claims (Counts II and III) fail because the Governor's orders concern non-expressive conduct, not speech. See *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020) (per curiam); see also *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937) ("The right of peaceable assembly is a right cognate to th[at] of free speech … ."); *Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 972 n.16 (7th Cir. 2000) ("We evaluate free speech and free assembly claims under the same analysis.").

The substantive-due-process claim asserted in Count IV appears to be nothing more than a catch-all used to reiterate grievances already captured by other theories. To the extent that we can discern its substance, it is that "Plaintiffs' rights to freedom of speech, assembly, and travel are fundamental rights protected by the U.S. Constitution," and that the Governor's orders have allegedly encroached on those rights. But repackaging those theories under the guise of a due-process claim does not make them more compelling. And the fleeting allusions to travel, seeming afterthoughts thrown in for good measure, fare no better.

Plaintiffs also recycle their viewpoint-discrimination, free-speech argument as an equal-protection challenge in Count V, alleging that "[t]he Defendant is picking Constitutional winners and losers by allowing groups of people with separate or

differing political and social agendas and view-points including the radical atheist group, Antifa, to gather in large groups, protest without restrictions and government protection." To the extent that this is distinct from the free-speech claim we have already discussed, it also fails. We observed in *Illinois Republican Party v. Pritzker* that the text of the executive orders did not exempt certain political groups from the order limiting the size of gatherings and thus did not facially discriminate. 973 F.3d 760, 770 (7th Cir. 2020). Although we did not "rule out the possibility that someone might be able to prove" discriminatory enforcement of the orders, we held that "the record … f[ell] short." *Id.* We agree with the district court that Plaintiffs' allegations in the present case also fall short. Finally, we already have explained why Plaintiffs' Takings theory in Count VI does not survive a Rule 12(b)(6) analysis.

Although courts should "freely give leave [to amend] when justice so requires," the district court here granted Plaintiffs one opportunity to amend despite a highly "unpromising … initial pleading." *Runnion*, 786 F.3d at 519. It was under no obligation to grant Plaintiffs another, and it was not an abuse of discretion to refuse to do so when Plaintiffs showed no indication that they were willing or able to cure the deficiencies of their complaint.

## III

We **AFFIRM** the district court's denial of Plaintiffs' motion to amend their complaint for a second time. We also **AFFIRM** the dismissal of Counts I through V, but we modify the dismissal to be without prejudice, because it rests on a lack of Article III standing. Finally, we **AFFIRM** the dismissal with prejudice of Count VI.