NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CINDY ABSHIRE; et al., | No. 21-16442 |
| Plaintiffs-Appellants, | D.C. No. 2:21-cv-00198-JAM-KJN |
| v. | |
| GAVIN NEWSOM, Governor; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted December 5, 2022
San Francisco, California

Before: NGUYEN and SUNG, Circuit Judges, and BATAILLON,** District Judge.

Plaintiffs Cindy and Timothy Abshire, Alan and Monica Butts, Nomadness Corporation, and Mammoth Lakes Business Coalition appeal the district court's grant of Defendants' motion to dismiss. Defendants are various officials of the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

State of California ("State Defendants"), Mono County ("County Defendants"), and the town of Mammoth Lakes ("Town Defendants"), all named in their official capacities. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's dismissal de novo, construing all material allegations as true and in favor of Plaintiffs. *Rocky Mtn. Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019) (citation omitted); *Colwell v. Dept. of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). We affirm.

1. *Mootness*. Plaintiffs' claims for prospective relief are moot. Generally, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (internal quotation marks omitted) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)). Here, Plaintiffs acknowledge that the challenged orders have been rescinded but argue that the capable-of-repetition-yet-evading-review and voluntary-cessation exceptions to mootness apply. That argument, however, is foreclosed by *Brach v. Newsom*, 38 F.4th 6, 12–15 (9th Cir. 2022) (en banc). As we explained in *Brach*, "the fact 'the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot.'" *Id.* at 14 (quoting *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021)). Here, as

2

in *Brach*, the restrictions were temporary measures intended to curb the spread of Covid-19. The challenged orders were rescinded nearly two years ago and have never been reinstated. And, Governor Newsom recently issued a proclamation terminating the state of emergency as of February 28, 2023. Office of Governor Newsom, A Proclamation Terminating State of Emergency (Feb. 28, 2023), https://www.gov.ca.gov/2023/02/28/governor-newsom-marks-end-of-californias-covid-19-state-of-emergency/. Therefore, Plaintiffs' fears that the orders could be reinstated are "too remote and speculative to serve as a firm foundation for our jurisdiction." *Brach*, 38 F.4th at 14 (internal quotation marks and citation omitted).

Although Plaintiffs' claims for prospective relief are moot, their claims for damages against the County and Town Defendants are not moot. *See Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003) (finding plaintiffs' claims for damages represented a "live controversy . . . between the parties").

2.  *Nomadness's Standing*. We affirm the district court's dismissal of Nomadness's claims for lack of standing.[1] The district court determined that the rights that Nomadness seeks to enforce are the rights of third parties (the property owners and businesses with whom Nomadness contracts), and that Nomadness failed to establish the requirements for third-party standing.

---

[1] We need not address the district court's dismissal of Coalition's claim for damages because Plaintiffs do not challenge that ruling on appeal.

But even assuming Nomadness alleges direct injury to its own property and financial interests, Nomadness nevertheless lacks standing because it has not adequately alleged an injury-in-fact or that any alleged damages are fairly traceable to Defendants' conduct. Standing requires a plaintiff to show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Nomadness does not allege that it contracted with any property owners in Mammoth Lakes or Mono County, nor does it allege specific facts showing that it had to cancel any reservations or lost any revenue because of the orders. Its conclusory allegations are not enough for us to infer that any drop in reservations is fairly traceable to Defendants' conduct instead of other causes, such as seasonal fluctuations in the short-term rental market or vacationers' reluctance to travel during a global pandemic. *See Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141–43 (9th Cir. 2013). Because Plaintiffs' claims for prospective relief are moot and Nomadness lacks standing to bring any damages claims, we have jurisdiction to consider only

4

the Abshires' and Butts' claims for damages.[2]

3.  *Substantive Due Process.* Plaintiffs claim that Defendants' orders violated their substantive due process rights by impinging on their fundamental right to interstate travel and their purportedly fundamental right to intrastate travel.[3] But, all of Plaintiffs' claims for prospective relief are moot, and Plaintiffs do not allege that any of the challenged orders restricted Plaintiffs' right to travel in a way that caused them damages. Plaintiffs argue only that they lost revenue because of restrictions on their out-of-state guests' right to travel. Even if Plaintiffs' complaint alleged such damages, they have not met the requirements to assert third-party claims on behalf of their out-of-state guests. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Plaintiffs' complaint does not specifically identify any out-of-state guests, and it does not establish that Plaintiffs' relationship to those guests is sufficiently close or that those guests' ability to bring claims on their own behalf is hindered such that third party standing would be appropriate. *See id.*

Plaintiffs broadly argue that the court should apply intermediate scrutiny because the challenged orders are "unprecedented in their scope and severity," but

---

[2] Although only the Abshires' and Butts' claims for damages remain, we continue to refer to those individual plaintiffs as "Plaintiffs" for simplicity.
[3] Plaintiffs acknowledge that neither the Supreme Court nor this court has recognized a fundamental right to intrastate travel.

Plaintiffs cite no precedent that applies to the alleged facts here. Rational basis review therefore applies. "Under this deferential standard, [Plaintiffs] must show that the [Defendants'] actions are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.'" *Slidewaters LLC v. Wash. State Dep't of Labor and Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) (quoting *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012)). As the district court noted, the restrictions on lodging, hotels, and short-term rentals are rationally related to the goal of limiting the spread of Covid-19, because the restrictions reduce the mixing of different households.

4. *Equal Protection*. Plaintiffs assert that Defendants' orders violated their right to equal protection in two ways: (1) some businesses were allowed to operate while other businesses, including Plaintiffs', were not; and (2) Mono County was arbitrarily grouped into the much larger and more Covid-19-affected Southern California region by the Regional Stay Home Order and related local orders. We apply rational basis review to assess the validity of these classifications because they neither involve a suspect class nor burden a fundamental right. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277–78 (9th Cir. 2004). Because the challenged orders are legislative acts that do not impinge on fundamental rights or employ suspect classifications, we presume the orders are valid, and that "presumption is overcome only by a 'clear showing of arbitrariness and

6

irrationality.'" *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (quoting *Hodel v. Indiana*, 452 U.S. 314, 331–32 (1981)).[4]

Plaintiffs' equal protection claims for prospective relief against the State Defendants are moot as described above. Plaintiffs do not state a violation of the Equal Protection Clause based on the local orders implemented by the County and Town Defendants. It was not "clearly arbitrary" for Defendants to take a categorical approach to deeming businesses as non-essential, particularly in an emergency, and Defendants are "not required to draw a perfect line" in deciding which businesses can safely operate and which cannot. *Slidewaters*, 4 F.4th at 758–59.

As for Plaintiffs' claim that Defendants violated the Equal Protection Clause by including Mono County in the Southern California region, the Equal Protection Clause "is not violated when a geographic area is singled out for different treatment." *Columbia River Gorge United-Protecting People & Prop. v. Yeutter*, 960 F.2d 110, 115 (9th Cir. 1992). "[T]he Equal Protection Clause relates to equal protection of the laws between persons as such rather than between areas.'" *Id.*

---

[4] Plaintiffs concede that their claim is not subject to strict scrutiny, but they urge the court to apply intermediate scrutiny. Intermediate scrutiny is limited to circumstances that are not at issue in this case. *E.g. United States v. Virginia*, 518 U.S. 515 (1996) (gender discrimination); *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (discrimination against children of unmarried parents).

(internal quotation marks omitted) (quoting *Griffin v. Cty. Sch. Bd. Of Prince Edward Cty.*, 377 U.S. 218, 230 (1964)).

5.  *Procedural Due Process*. Plaintiffs assert that their right to procedural due process was violated because (1) the orders amounted to involuntary confinement without due process, and (2) they were cited and fined without proper notice and an opportunity to be heard. To assess whether a due process violation has occurred, "[w]e must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012) (quoting *Ingraham v. Wright*, 403 U.S. 651, 672 (1977)).

We first address Plaintiffs' contention that the orders deprived them of liberty without due process. Plaintiffs' claims against the State Defendants, if any, are moot as described above. And Plaintiffs' claims against the Town and County Defendants, if any, are not cognizable. The restrictions imposed by the orders are plainly distinguishable from involuntary civil commitment. *Cf. O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975) (holding that the defendant violated the plaintiff's constitutional right to freedom by confining him in the state hospital although he was not a danger to himself or others).

8

Turning to Plaintiffs' argument regarding the notice and citation, Plaintiffs' own allegations show that they received pre-deprivation notice in the form of a citation. The Abshires also spoke with a revenue specialist over the phone who explained the reason for the citation. Additionally, Defendants informed the Abshires that they could, within five days and before payment of the fine was due, provide evidence of a mistake by providing their rental and financial records. The Butts received an individualized letter attached to their citation. They were also informed that they could provide evidence of an exemption to a specified email address. Neither the Butts nor the Abshires allege that they ever paid the fines. By their own allegations, Plaintiffs clearly received pre-deprivation notice and some opportunity to provide evidence in their defense.

6. *Takings Clause.* Plaintiffs allege that the orders amounted to an unconstitutional regulatory taking in violation of the Fifth Amendment. *Per se* takings occur "where government requires an owner to suffer a permanent physical invasion of her property" or where regulations "completely deprive an owner of '*all* economically beneficial us[e]' of her property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005) (emphasis and correction in original) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). "Outside these two relatively narrow categories . . . , regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)." *Id.*

9

Plaintiffs do not allege facts sufficient to establish that they suffered a physical invasion of their property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 438 (1982). Nor do they state a claim for a total regulatory, or *Lucas*, taking because they were not deprived of all economically beneficial uses of their land. *See Lucas*, 505 U.S. at 1019. Plaintiffs were free to sell their land or use it for other lawful purposes, and Plaintiffs do not claim that the property held no value in the real estate market because of the orders. *See id.* at 1020.

Finally, to determine whether the government must compensate plaintiffs for their economic injuries based on a partial regulatory taking, we must weigh (1) the economic impact of the regulation on plaintiffs; (2) the extent to which the regulation interferes with plaintiffs' investment-backed expectations; and (3) the character of the governmental action. *Penn Central*, 438 U.S. at 124. Applying that framework, the second and third factors weigh heavily against Plaintiffs. Plaintiffs were barred from renting their property only for a matter of months. "[T]he duration of the restriction is one of the important factors that a court must consider in the appraisal of a regulatory takings claim." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 342 (2002). And Defendants' orders "adjust[ed] the benefits and burdens of economic life to promote the common good," *Penn Central*, 438 U.S. at 124, by preventing the spread of a deadly virus. That governmental action was not a taking. *See Nowlin v. Pritzker*, 34 F.4th 629,

10

634–35 (7th Cir. 2022) (holding that no taking occurred when plaintiff failed to allege specific facts regarding their losses related to Covid-19 restrictions on their businesses).

7. *Dormant Commerce Clause*. Plaintiffs' final claim is that Defendants' orders imposed an unconstitutional burden on interstate commerce in violation of the dormant Commerce Clause. Plaintiffs' claim against State Defendants, if any, is moot. And Plaintiffs have failed to state a claim against the County and Town Defendants.

Absent conflicting federal legislation, a state may "make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 669–70 (1981) (quoting *S. Pac. Co. v. Arizona*, 325 U.S. 761, 767 (1945)). When states regulate to promote public health or safety, there is a "strong presumption of validity." *Id.* at 670 (quoting *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 524 (1959)). We must weigh "the asserted safety purpose against the degree of interference with interstate commerce," and in doing so, if we determine that the "safety justifications are not illusory, [we] will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Id.* at 670 (quoting *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 449 (1978) (Blackmun, J., concurring)).

11

Plaintiffs do not allege that Defendants' stated justification for their orders—to stop the spread of Covid 19—was illusory and that their real purpose was to discriminate against out-of-state interests. Rather, they allege that Defendants failed to appropriately weigh the benefits of the orders against the negative effects. Their claim does not fit within the narrow circumstances in which courts withhold deference to legislators' concern for public health and safety. *See id.* at 675; *Yakima Valley Mem. Hosp. v. Wash. State Dept. of Health*, 731 F.3d 843, 850 (9th Cir. 2013) (declining to "insert ourselves into [a] medical debate" when plaintiff offered no evidence that health benefits of regulation were "illusory or manufactured").

**AFFIRMED.**