**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCAP-22-0000368
05-MAR-2024
07:49 AM
Dkt. 35 OP**

SCAP-22-0000368

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

_____

SONIA DAVIS, JESSICA LAU, LAURALEE B. RIEDELL,
and ADAM M. WALTON, Plaintiffs-Appellees,

vs.

RICHARD T. BISSEN, JR., County of Maui Office of the Mayor,
SCOTT TERUYA, County of Maui Department of Finance,
and COUNTY OF MAUI, Defendants-Appellants.

_____

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CAAP-22-0000368; 2CCV-21-0000305)

MARCH 5, 2024

RECKTENWALD, C.J., McKENNA AND EDDINS, JJ.,
CIRCUIT JUDGE PARK AND CIRCUIT JUDGE KAWASHIMA,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This appeal concerns a sweep of a large encampment of houseless individuals that occurred in Maui County in September 2021.  Before the sweep, Sonia Davis, Jessica Lau, Lauralee Riedell, and Adam Walton ("plaintiffs") made written requests

for a contested case hearing, but those requests went ignored. The sweep occurred as planned, and Davis and Lau's personal property was seized.

The plaintiffs filed a Hawai'i Revised Statutes ("HRS") § 91-14 agency appeal with the Circuit Court of the Second Circuit ("circuit court").[1] They asserted they were denied procedural due process under the state and federal constitutions when the county seized their personal property without proper notice or an opportunity to be heard. The County of Maui, Mayor Michael Victorino,[2] and Director of Finance Scott Teruya (collectively, "the County") filed a motion to dismiss, arguing the circuit court lacked jurisdiction over the appeal because the plaintiffs did not have a protected property interest in continuing to store their belongings on County land. The circuit court granted the motion as to Riedell and Walton, who had not lost property during the sweep, but denied the motion as to Davis and Lau, who had. The circuit court then granted the County leave to file an interlocutory appeal.

---

[1]     The Honorable Kirstin M. Hamman presided.

[2]     Pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 43(c) (2010), Mayor Richard Bissen was substituted as a party in place of Mayor Michael Victorino upon the latter's election to the office of Maui County Mayor. See HRAP Rule 43(c) ("When a public officer is a party to an appeal . . . in his . . . official capacity and during its pendency . . . ceases to hold office, the action does not abate and his . . . successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party. . . .").

This court accepted transfer of this case from the Intermediate Court of Appeals ("ICA"). The County raises the following points of error:

> 1) Was it proper for the Court to make findings on the issues of finality, the following of applicable agency rules and standing when those issues were not raised by any party in either briefing or hearings on the County's Motion to Dismiss?
>
> . . . .
>
> 2) Did the Court err in making substantive findings on the merits of Plaintiffs' allegations and issuing Findings of Fact in its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Notice of Appeal?
>
> . . . .
>
> 3) Did the Court err in determining that Constitutional Due Process required a contested case hearing before Defendants could remove houseless plaintiffs and their belongings from County property?
>
> . . . .
>
> 4) Did the Court err in Denying the County's Motion to Dismiss as to the claims of Plaintiffs SONIA DAVIS and JESSICA LAU?

We affirm the circuit court and hold as follows. First, the circuit court properly ruled on all of the factors pertinent to its jurisdiction over the plaintiffs' agency appeal. Second, plaintiffs undeniably possessed a property interest in their chattels (personal property) protected by Article I, Section 5 of the Constitution of the State of Hawai'i. Thus, the due process clause of the Hawai'i Constitution required a hearing before the County could seize the plaintiffs' chattels. The circuit court properly granted the County's motion to dismiss Riedell and Walton's claims because they did not lose property during the sweep and properly denied the County's motion to dismiss as to Davis and Lau, who did.

3

## II.  Background

### A.   The County's Kanahā Sweep

On September 1, 2021, the County issued a press release announcing its plans to clear out a large encampment of houseless individuals on County property on Amala Place near Kanahā Pond and the Wailuku-Kahului Wastewater Treatment Plant. The County had been working with the houseless individuals to relocate them.  Mayor Victorino was concerned about the upcoming rainy season and believed it was not compassionate to allow people to continue living among mounds of rubbish, human waste, and used syringes.  He stated, "Once the unsheltered residents have settled into new accommodations, we will start the clean-up. . . ."  Scott Fretz, the Maui Branch Manager for the Department of Land and Natural Resources' ("DLNR") Division of Forestry and Wildlife stated that Kanahā Pond was an important breeding site for numerous species of endangered waterbirds. The fence around the pond had been vandalized, syringes and other hazardous waste littered the area, and his staff had been harassed and threatened.  Eric Nakagawa, the director of the County of Maui Department of Environmental Management, stated that his staff had reported individuals blocking the roadway entrance to the Kahului wastewater treatment plant on Amala Place, starting verbal arguments, and jumping on a truck during an incident in which police were called.

4

On September 14, 2021, the County distributed notices to houseless persons on Amala Place and posted notices to vacate county property by September 20, 2021.  The notice to vacate stated, "Habitation in vehicles, camping and/or the storage of personal property on County of Maui properties located in the vicinity of: Amala Place and Keoneone Street, along with the portion known as the Kahului Wastewater Treatment Plant, is prohibited."  The notice announced that the "premises will be cleared of personal property and vehicular access will be restricted between:  Monday, September 20, 2021 at 6:00 am - Wednesday[,] September 22, 2021 at 4:30 pm."  It further advised that "[a]ll campsites, personal property, and vehicles must be removed from these Premises by or before" those dates and times, or else "[a]ny person who remains on the 'Premises' during this time may be cited for Trespassing under Hawaii Revised Statutes section 708-815."

The notice to vacate contained no information on who to contact to challenge the sweep.  It also contained no information as to what would happen to the personal property cleared from the premises.  The notice, however, did contain contact information and a list of services offered to houseless individuals by Mental Health Kokua, Ka Hale I Ke Ola, Family Life Center, and the Salvation Army.

On September 17, 2021, the County issued another press release, indicating the cleanup would begin on September 19, 2021 and end on September 24, 2021. The press release noted that many of the houseless individuals had received or were in the process of receiving shelter, but it also acknowledged 14 individuals remained on site. Later press releases also mentioned that eight to ten individuals still remained on the site in the days preceding the planned sweep.

The sweep took place on September 20-24, 2021. There were no notices issued to houseless individuals as to where their personal property was taken, if it was stored, how to reclaim the property, or if the property was going to be destroyed. The County, however, did follow certain statutory procedures with respect to vehicles removed from the site. The County posted notices stating that abandoned vehicles towed from the Kanahā area would be stored for 30 days then disposed of and that derelict vehicles towed from the Kanahā area may be disposed of before 30 days. The County provided a phone number to call for individuals to claim their vehicles or remove belongings from those vehicles.

**B. Circuit court proceedings**

On October 20, 2021, plaintiffs Davis, Lau, Riedell, and Walton filed a notice of appeal to the circuit court from the September 20-22, 2021 "final decision" of the County "to execute

the forced eviction and vacatur of people and their belongings from putative County of Maui property." They declared each had sent the County written requests for contested case hearings before the sweep, but the County did not act upon the requests. The plaintiffs alleged the County violated their state and federal constitutional procedural due process rights by seizing their property without proper notice or an opportunity to be heard. They sought "a declaratory judgment that County Appellees violated Houseless Appellants' constitutional rights, an order remanding the matter for a contested case . . . , and an order requiring County Appellees . . . to comply with the Hawai'i and U.S. constitutions in conducting any future evictions or vacaturs of Houseless Appellants and other houseless people from County of Maui property (including by providing a *pre-deprivation* contested case hearing)."

In her declaration appended to the notice of appeal, Davis averred she had been living in the Kanahā area before and during the Kanahā sweep. She had been incarcerated for three weeks in fall 2021 for missing a phone call from her probation officer. When she was released in mid-September, she learned of the impending sweep from others living in the area. A police officer had also handed Davis a notice of the sweep. Davis had just a few days to move her items before the sweep began. Davis had filed a contested case request with the county on September

20, 2021. Before the sweep began, she met with Mayor Victorino in person. He told her he could not change the date of the sweep but he would help get people into shelters before the sweep. On the day of the sweep, Davis vacated the Kanahā area. She was unable to move all of her property, so she lost pots and pans, tents, a canopy, folding tables, diapers, a stroller, a playpen, a baby's car seat, her sister's two vehicles, and her niece's two vehicles.

Plaintiff Lau declared she had been living in the Kanahā area before and during the Kanahā sweep. Lau had filed a contested case request with the county on September 6, 2021. Lau met with Mayor Victorino in person before the sweep. He told her the sweep would not be postponed but if houseless residents used duct tape or caution tape to mark their belongings, the County would not touch that property. He also told her nothing would happen until all residents were settled into new accommodations. On the day of the sweep, Lau was still unsheltered and she observed the sweep as it happened. She was able to move most of her belongings before the sweep, but she did lose a portable water tank, fishing poles, and her Bluetooth speakers to the sweep.

Plaintiffs Riedell and Walton, a couple living together in the Kanahā area before and during the sweep, alleged they did not receive notice of the sweep because both were working when

the notices were distributed by the police. Each had filed a contested case request with the county on September 16, 2023. Neither Riedell nor Walton were able to meet in person with Mayor Victorino because both were working. On the day of the sweep, Riedell and Walton were still living at the Kanahā site and told police they were going to stay and contest the sweep. Neither Riedell nor Walton lost any property during the sweep.

None of the plaintiffs received contested case hearings or responses to their contested case hearing requests. None of the plaintiffs were given pre-deprivation or post-deprivation hearings.

On November 9, 2021, the County filed a motion to dismiss the appeal for lack of jurisdiction under Hawai'i Rules of Civil Procedure ("HRCP") Rule 12(b)(1) (2000). The County argued it did not need to conduct a contested case hearing because such a hearing was not required by administrative rule, by statute, or by constitutional due process. With respect to constitutional due process, the County argued, "While [the plaintiffs] may have a property interest in their chattels, those rights do not exist in a vacuum," because they have no legitimate entitlement to "illegally occupy public lands and store their property thereon. . . ." Therefore, the county argued, no contested case was required, and no circuit court appeal from a contested case would lie.

In their memorandum in opposition to the County's motion to dismiss, the plaintiffs pointed out there were four requirements for the circuit court to have jurisdiction over their case under HRS § 91-14: "(1) a contested case hearing that was 'required by law'; (2) finality; (3) the following of applicable agency rules; and (4) standing," citing Public Access Shoreline Hawai'i v. Hawai'i County Planning Comm'n, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) ("PASH"). The plaintiffs noted the County "d[id] not contest the latter three elements[, n]or could they," because the elements were plainly met. As to "finality," the plaintiffs argued the final decision was the County's decision to conduct the sweep. As to "the following of applicable agency rules," the plaintiffs argued they submitted contested case requests. As to "standing," the plaintiffs argued they were injured by the agency action when their chattels were unconstitutionally seized.

As to the County's argument that the circuit court did not have jurisdiction over the case because there was no contested case hearing held, the plaintiffs counter-argued that a court has jurisdiction to review the denial of a contested case hearing prior to an agency action, citing Kaleikini v. Thielen, 124 Hawai'i 1, 26, 237 P.3d 1067, 1092 (2010). The plaintiffs argued the County effectively denied the requests by ignoring them, citing Kilakila 'O Haleakala v. Bd. of Land and Nat. Res.,

131 Hawai'i 193, 203, 317 P.3d 27, 37 (2013).  As to the County's argument that contested case hearings were not required by statute, administrative rule, or by constitutional due process, the plaintiffs asserted contested case hearings were required by constitutional due process because their property interest in chattels was at stake.

The County replied that the plaintiffs had no right to continue storing their property on County grounds after actually receiving the notice to vacate, and they had ample time to remove themselves and their belongings.  Further, even if there were a protected property interest at stake, the County argued a contested case hearing was not necessarily required when alternative processes were available, for example, a petition for writ of mandamus or a request for an injunction.

The circuit court held a hearing on the County's motion to dismiss on December 7, 2021.  The circuit court requested supplemental briefing from the parties as to whether a contested case hearing was required by constitutional due process.  The court asked the parties to brief the three Flores factors:  (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional safeguards would

entail, referring to Flores v. Bd. of Land and Nat. Res., 143 Hawai'i 114, 424 P.3d 469 (2018).

The parties submitted their supplemental briefs. As to the first Flores factor (the private interest affected), the plaintiffs maintained there can be no dispute they had a protected property interest in their chattels, which were vital to their survival. The County stated that it had addressed the chattels argument in its prior briefing.

As to the second Flores factor (the risk of erroneous deprivation through the procedures actually used and the probable value of additional or alternative procedural safeguards), the plaintiffs argued their chattels were likely destroyed, which is a decision the County cannot reverse. They argued additional safeguards could have been provided, such as more time, notice that included procedures available for challenging the sweep, and a hearing. The County counter-argued it engaged in outreach efforts for months prior to the sweep. Further, it asserted the plaintiffs received actual notice, as each knew to request a contested case hearing, and two of them (Davis and Lau) were able to meet in person with Mayor Victorino. The County's position was that the plaintiffs had more than enough time, once they had received notice, to vacate the Kanahā area. Further, the County noted that Riedell and Walton admitted neither had lost any property to the sweep.

12

As to the third Flores factor (the governmental interests and the burdens that additional safeguards would create), the plaintiffs argued the County overstated its governmental interests in public health and safety, and that the plaintiffs' survival interest outweighed those interests. Further, the plaintiffs argued the burden on the County to provide sufficient notice and a hearing was not great. For example, a consolidated hearing could have sufficed to address all of their concerns. The County counter-argued it had a substantial and compelling interest in keeping the Kanahā property clean and safe to avoid liability for failure to police its property. It also asserted its interests in accessing the wastewater treatment facility and bird sanctuary on the property. The County claimed holding contested case hearings for the plaintiffs would have been too administratively burdensome on it, citing statutory notice, service, and trial-type hearing requirements in HRS chapter 91.

After a further hearing, the circuit court granted in part, and denied in part, the County's motion to dismiss ("circuit court's order"). The motion was granted as to plaintiffs Riedell and Walton, who had not lost any property during the sweep. The motion was denied as to plaintiffs Davis and Lau, who had lost property. In its findings of fact, the circuit court noted, "The record does not show that Defendants had any procedures in place to hold, store, or return personal property

(other than vehicles) seized by Defendants during the Kanahā Sweep." The circuit court also noted, "The record does not show that Defendants held, stored, or returned personal property (other than vehicles) seized by Defendants during the Kanahā Sweep." Instead, the circuit court found, "the record suggests that . . . Defendants proceeded to destroy the personal property [(other than vehicles)] left behind in the Kanahā Area, and that Defendants had seized, during the Kanahā Sweep." No party challenges these (or any) findings of fact; therefore, we accept them as true. Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) ("Findings of fact . . . that are not challenged on appeal are binding on the appellate court.").

The circuit court made the following conclusions of law relevant to this appeal:

> 13. The court applies a two-step analysis in deciding whether a constitutional due process right to a hearing exists: (1) whether "the particular interest which claimant seeks to protect by a hearing [is] 'property' within the meaning of the due process clauses of the federal and state constitutions," and (2) if, so, "what specific procedures are required to protect it," Flores, 143 Hawai'i at 125, 424 P.3d at 480 (quoting Sandy Beach Def. Fund v. City Council of City & Cty. of Honolulu, 70 Haw. 361, 377, 773 P.2d 250, 260 (1989)).

> 14. The Court finds that Plaintiffs' personal property and vehicles are property within the meaning of the due process clauses of the U.S. and Hawai'i constitutions. See Brown v. Thompson, 91 Hawai'i 1, 9, 979 P.2d 586, 594 (1999), as amended (July 13, 1999) (holding that a derelict boat was "unquestionably" property protected by due process under the Fifth Amendment to the U.S. Constitution and article I, section 5 of the Hawai'i Constitution); In re Application of Maui Elec. Co., Ltd., 141 Hawai'i 249, 260, 408 P.3d 1, 12

(2017) (confirming that procedural due process protects "chattels"); Lavan v. City of Los Angeles, 693 F.3d 1022, 1031 (9th Cir. 2012) (describing houseless individuals' "interest in the continued ownership of their personal possessions" as "the most basic of property interests encompassed by the due process clause").

15.  The Court does not agree with Defendants' contrary argument that Plaintiffs' personal property loses protections under constitutional due process by virtue of being maintained on public property allegedly "in violation of criminal statutes."

16.  Due process also protected the vehicles that were in Plaintiffs' possession, regardless of who were the registered owners, since Plaintiffs were in possession of those vehicles and were using those vehicles both to store other personal property and for shelter.

. . . .

19.  The Court concludes that constitutional due process required a contested case hearing before Defendants deprived Plaintiffs SONIA DAVIS and JESSICA LAU of their constitutionally protected interests in their personal property.

With respect to the three Flores considerations, the court made

the following conclusions of law:

22.  The Court finds that the private interests at stake here are significant.  The private interests are chattels, which are core property interests under the Hawaiʻi and U.S. constitutions.  And they are not just any chattels, but chattels used as shelter and life-sustenance for Plaintiffs SONIA DAVIS and JESSICA LAU.  See De-Occupy Honolulu v. City & Cty. of Honolulu, No. CIV 12-00668 JMS, 2013 WL 2285100, at *6 (D. Haw. May 21, 2013) (recognizing that "a strong private interest exists in Plaintiffs' continued ownership of their possessions, especially given that the possessions . . . may be everything that a homeless individual owns"); Mitchell v. City of Los Angeles, No. CV1601750SJOGJSX, 2016 WL 11519288, at *5 (C.D. Cal. Apr. 13, 2016) (finding that the private interest was "significant" because it "touches on the basic survival of homeless individuals").

23.  The Court finds that there was a high risk of erroneous deprivation of Plaintiffs SONIA DAVIS and JESSICA LAU's property interest through the procedures used by Defendants.  The method for providing notice and procedures Defendants used did not afford Plaintiffs with the ability to meaningfully challenge the Kanahā Sweep and the taking and destruction of their property.  Among other things, the Notice to Vacate did not provide for procedures available

15

to challenge the agency action, nor did it provide information on how to retrieve items post-seizure.  See Brown v. Thompson, 91 Hawaiʻi at 10, 979 P.2d at 595. Further, as noted, the record does not show that Defendants had any process in place to store Plaintiffs' personal property.  Instead, it appears that Defendants seized and destroyed personal property taken during the Kanahā Sweep. The absence of such procedures significantly increased the risk of erroneous deprivation.  See Mauna Kea Anaina Hou, 136 Hawaiʻi at 412, 363 P.3d at 260 (stating that "the fact that the Board's administrative rules do not appear to provide a procedural vehicle for the Board to reverse its grant of a permit, if it were later found that the permit was improperly granted, elevated the risk of erroneous deprivation").

24.  The Court also finds that the procedures actually used by Defendants were materially different from those used by the municipalities in the decisions cited by Defendants in their briefing.  See Dkt. 97 at 8-9 (citing cases in which municipalities had a "policy of storing personal property that is taken after an encampment is removed" and "items were stored and inventoried, and the City had procedures for people to retrieve their property").  For example, in De-Occupy Honolulu v. City & Cty. of Honolulu, the City and County of Honolulu was required to announce its intentions at every step, pre-seizure, post-seizure, and pre-destruction.  No. CIV. 12-00668 JMS, 2013 WL 2285100, at *6 (D. Haw. May 21, 2013).  Here, by contrast, Defendants did not announce their intentions at every step, and there were no alternative procedures in place, thus increasing the risk of erroneous deprivation of Plaintiffs' property.

25.  Under these circumstances, more or alternative procedural safeguards — including the holding of a contested case hearing – would have reduced the risk of erroneous deprivation.

26.  The Court acknowledges that Defendants may have important interests in public health, safety, and the maintenance of its public spaces, but on balance they do not outweigh the significant private interests at stake, especially in light of the high risk of erroneous deprivation created by the procedures Defendants actually used.  See Mitchell, 2016 WL 11519288, at *6 (acknowledging "significant" governmental interest and "heavy costs," but stating that "these costs do not justify infringing the basic constitutional rights of homeless individuals" and that, "[g]iven the scope of the property interest at stake," the city's interest did not "outweigh[] the individual interests of homeless people").

The County moved for leave to take an interlocutory appeal of the circuit court's order, which the circuit court granted.

The County timely filed its notice of appeal, and this court accepted transfer of the appeal.

### III. Standards of Review

#### A. Motions to dismiss

A trial court's grant or denial of a motion to dismiss for "lack of subject matter jurisdiction is a question of law, reviewable de novo." Norris v. Hawaiian Airlines, Inc., 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), aff'd, Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 114 S. Ct. 2239 (1994). In Norris, the Hawai'i Supreme Court adopted the view of the Ninth Circuit Court of Appeals in Love v. United States, 871 F.2d 1488, 1491 (9th Cir. 1989), opinion amended on other grounds and superseded by Love v. United States, 915 F.2d 1242 (9th Cir. 1989), that:

> review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Norris, 74 Haw. at 240, 842 P.2d at 637 (cleaned up). "However, when considering a motion to dismiss pursuant to HRCP Rule 12(b)(1) the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." Id. (cleaned up).

**B. Constitutional law**

This court answers questions of constitutional law by exercising its own independent judgment based on the facts of the case. State v. Trainor, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996). Questions of constitutional law are reviewed under the right/wrong standard. State v. Toyomura, 80 Hawai'i 8, 15, 904 P.2d 893, 900 (1995).

**C. Findings of fact and conclusions of law**

This court reviews findings of fact for clear error. Furukawa v. Honolulu Zoological Soc'y, 85 Hawai'i 7, 12, 936 P.2d 643, 648 (1997). A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with a definite and firm conviction that a mistake has been made. State v. Kane, 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998). This court reviews a trial court's conclusions of law de novo under the right/wrong standard. State v. Medeiros, 89 Hawai'i 361, 364, 973 P.2d 736, 739 (1999). A conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness. Id.

**IV. The Parties' Arguments on Appeal**

**A. The County's arguments**

On appeal, the County raises the following points of error:

> (1) Was it proper for the Court to make findings on the issues of finality, the following of applicable agency rules and standing when those issues were not raised by any

18

> party in either briefing or hearings on the County's Motion to Dismiss?
> . . . .
> (2) Did the Court err in making substantive findings on the merits of Plaintiffs' allegations and issuing Findings of Fact in its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Notice of Appeal?
> . . . .
> (3) Did the Court err in determining that Constitutional Due Process required a contested case hearing before Defendants could remove houseless plaintiffs and their belongings from County property?
> . . . .
> (4) Did the Court err in Denying the County's Motion to Dismiss as to the claims of Plaintiffs SONIA DAVIS and JESSICA LAU?

Stated differently, the County first argues that the circuit court should not have made full findings as to whether it possessed jurisdiction over the plaintiffs' agency appeal. The County next argues that the plaintiffs did not have a constitutionally protected property interest in storing their chattels on County property and, even if they did, the process due would not be a contested case hearing. The County thus argues that the circuit court should have granted its motion to dismiss as to plaintiffs Davis and Lau.

At oral argument, the County chose not to focus on the first point of error, and rightfully so. The circuit court did not err in fully analyzing all of the factors necessary to its jurisdiction over the plaintiffs' agency appeal. The focus of this appeal, then, is whether the plaintiffs had a constitutionally protected property interest, and, if so, whether a contested case hearing was the process due.

19

At oral argument, the County ultimately conceded that the plaintiffs possess a constitutionally protected interest in their chattels.  Nevertheless, the County maintains that a contested case hearing was not necessary in order to protect that property interest.  The County argues courts must consider "the specific procedures required to comply with constitutional due process" by balancing the Flores factors:

> (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail.

143 Hawai'i at 126-27, 424 P.3d 469 at 482.

With respect to the first factor (the private interest that will be affected), the County argues the plaintiffs have no right to indefinitely store personal items on public land after receiving notice that the County intended to clear its property.  Further, the County argues none of the plaintiffs are registered owners of any of the vehicles impounded and, to date, have not indicated any property interest in any of the vehicles.

The second factor is "the risk of erroneous deprivation of a property interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards."  The County points out the following procedures were actually used:  outreach efforts, posted written notice of the sweep, Davis and Lau's in-person meeting with

20

Mayor Victorino prior to the sweep, and notice mailed to registered owners of impounded vehicles. The County argues these procedures provided plaintiffs with enough time to remove their belongings to avoid a deprivation of their property interests. The County states plaintiffs Riedell and Walton did remove their property and did not suffer any losses during the sweep. The County maintains Davis had two weeks to remove her property after receiving notice, and Lau had five days to remove her property, in order to avoid a deprivation of their property interests, but they chose not to act. The County states courts have held there was sufficient notice in cases where houseless individuals received 24-hours' notice of a sweep, citing De-Occupy Honolulu v. City & Cnty. of Honolulu, No. CIV. 12-00668 JMS, 2013 WL 2285100, at *6 (D. Haw. May 21, 2013), and 72-hours' notice of a sweep, citing Sullivan v. City of Berkeley, No. C 17-06051 WHA, 2017 WL 4922614, at *6 (N.D. Cal. Oct. 31, 2017), and Hooper v. City of Seattle, No. C17-0077RSM, 2017 WL 591112, at *5 (W.D. Wash. Feb. 14, 2017). The County also asserts the plaintiffs could have sought preliminary injunctive relief from the courts but did not.

The County next asserts a contested case hearing was not necessary because the plaintiffs would not have been able to prove that they "owned the property, that the County had no interest in protecting its property to assure public access,

that the State Wildlife Sanctuary should be abandoned, or that its Wailuku-Kahului Wastewater Treatment Plant should be shut down." Further, the County cites to De-Occupy Honolulu and James for the proposition that a contested case hearing is not required where the government has provided pre-seizure notice of the government action, post-seizure notice of the property seized, and information as to where the property seized would be held. De-Occupy Honolulu, No. CIV. 12-00668 JMS, 2013 WL 2285100, at *5; James v. City & Cnty. of Honolulu, 125 F. Supp. 3d 1080, 1094 (D. Haw. 2015). The County also cited to Sullivan and Hooper for the proposition that no pre-seizure hearing is necessary where the government has provided notice of the seized property's location and the procedure for retrieving it. Sullivan, No. C 17-06051 WHA, 2017 WL 4922614, at *6; Hooper, No. C17-0077RSM, 2017 WL 591112, at *5. The County states, "These 'alternative procedures' have been determined to decrease the likelihood of erroneous deprivation of property interests while being substantially less onerous than providing individualized contested case hearings to any person who chooses to store their personal belonging[s] on public land prior to being able to undertake clean-up efforts"; therefore, a contested case hearing prior to clean-up efforts was not necessary.

With respect to the third factor (the governmental interest, including the burden that additional procedural safeguards would entail), the County argues it had a substantial and compelling interest in being able to keep its property clean and safe without excessive and duplicative administrative hurdles. The County points out that, had it not undertaken the sweep, it could have exposed itself to potential liability for failing to police the activity taking place on its property. The County also argued it needed to clear out the encampment so it could fix fencing around the Kanahā Pond Sanctuary in order to protect rare native water birds from predators. The County argued it should not have been required to hold about 40 contested case hearings for the approximately 40 houseless individuals who were encamped on its property. Such a process, the County argues, would have taken weeks or months to complete, under the procedures set forth in HRS chapter 91 for contested case hearings. The procedures include drafting a notice under HRS § 91-9 (2012 & Supp. 2021); providing notice via registered or certified mail or via publication under HRS § 91-9.5 (2012); holding a trial-type hearing; and rendering findings of fact, conclusions of law, and a decision and order, pursuant to HRS § 91-12 (2012). The County also points out that, if the contested case hearing is presided over by a hearings officer, under HRS § 91-11 (2012), the parties would be afforded an additional

opportunity to file exceptions and present arguments regarding the hearings officer's proposed decision.

The County therefore asks this court to reverse the circuit court's order.

## B. Plaintiffs' arguments

As to the County's argument that a contested case hearing was not necessary, the plaintiffs counter-argue that protection of their chattels automatically required a contested case; moreover, the plaintiffs had submitted written requests for contested case hearings.

The plaintiffs also argue that, even assuming a contested case hearing was not automatically required, the circumstances of this case warranted holding one. They agree with the County that the test for the "precise procedures" the government is required to follow to comply with constitutional due process involve the balancing of the following three Flores factors: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail.

The plaintiffs argue the private interest affected is significant and weighty: the chattels they use for shelter and

24

survival.  They next argue the procedures the County used presented a serious risk of erroneous deprivation.  There was a serious risk that their belongings would be erroneously seized as abandoned property.  They also assert their property was destroyed so that the County could not feasibly reverse its decision if it was found to be in error.  The plaintiffs note the cases the County relies on (Sullivan and De-Occupy Honolulu) involved situations in which the government entities actually stored belongings and provided notice of procedures to retrieve belongings.  No similar safeguards were in place for plaintiffs' non-vehicle chattels.

The plaintiffs further argue additional safeguards could have prevented an erroneous deprivation.  They argue they should have received written notice reasonably calculated to more precisely apprise them of the pending sweep and that such notice should have informed them of procedures available for challenging the government's planned action.  The press release, they argue, did not precisely describe the area subject to the sweep and did not inform the houseless community of the manner in which the sweep could be challenged.  The "community outreach" efforts, the plaintiffs argue, were oral and not written; thus, they too failed to provide adequate notice.  The Notice to Vacate also failed to provide adequate notice, because it was distributed by police officers on a single day to

houseless individuals residing along Amala Place.  The plaintiffs point out that the sweep encompassed a broader area than just one street.  Moreover, the Notice to Vacate contained no information as to how houseless individuals might challenge the sweep.

The plaintiffs also argue they could have been given more time.  For example, there were only five days between the date Davis received notice of the sweep and the commencement of the sweep.  The ultimate safeguard, plaintiffs argue, would have been a hearing so that they could have explained their individual circumstances, agreed to be relocated without the threat of criminal prosecution, asked for more time or other accommodations, challenged the legality of the sweep, requested assistance from the County, or simply have had the opportunity to be heard.

Lastly, the plaintiffs argue the County overstates the strength of its governmental interest and the burdens that additional safeguards would create.  They argue the County's health and safety interests should be placed in proper perspective and balanced against their need for survival.  They also point out the County's interests are only vaguely asserted and appear to scapegoat the houseless community for damaging County infrastructure, interrupting wastewater operations, degrading the environment, vandalizing County fencing, and

jeopardizing endangered water bird habitat. A contested case hearing, plaintiffs argue, would have afforded both sides a chance to examine and probe each other's interests. The plaintiffs lastly point out the burden on the County would have been slight to (1) add a line on the Notice to Vacate informing them who to contact to challenge the sweep or request an accommodation; and (2) hold a contested case hearing, which is "not identical to a full-blown trial in court."

The plaintiffs ask this court to affirm the circuit court's order.

## V. Discussion

Plaintiffs argue deprivation of their due process rights under both the state and federal constitutions. In State v. Wilson, __ Hawai'i __, __ P.3d __, SCAP-22-0000561, 2024 WL 466105 (Feb. 7, 2024), we adopted the "state-constitution first approach" to constitutional interpretation, under which we interpret the Hawai'i constitutional provision before its federal analogue. Wilson, SCAP-22-0000561, 2024 WL 466105, at *4. "Only if the Hawai'i Constitution does not reach the minimum protection provided by a parallel federal constitutional right should this court construe the federal analogue." Id.

Hence, at the outset, we address Article I, Section 5 of the Hawai'i State Constitution, which states, "No person shall be deprived of life, liberty or property without due process of

27

law. . . ."  The Fifth Amendment to the United States Constitution similarly states, "No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ."  A claim of due process requires a two-step inquiry: "(1) is the particular interest which the claimant seeks to protect by a hearing 'property' within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is 'property,' what specific procedures are required to protect it."  Aguiar v. Hawaii Hous. Auth., 55 Haw. 478, 495, 522 P.2d 1255, 1266.

The plaintiffs' chattels are a classic form of property over which they have a constitutionally protected interest. See, e.g., In re Application of Maui Elec. Co., 141 Hawai'i 249, 260, 408 P.3d 2, 12 (2017) ("These interests – property interests – may take many forms" because courts have long recognized that "property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.") (citation omitted, emphasis added)). "Chattels" are undoubtedly property interests under the Hawai'i Constitution Article I, Section 5's due process clause.  See Kekoa v. Sup. Ct. of Hawai'i, 55 Haw. 104, 108, 516 P.2d 1239, 1243 (1973) (per curiam), citing Fuentes v. Shevin, 407 U.S. 67 (1971).

For example, this court in Brown v. Thompson held that the vessel an individual was living aboard in Ke'ehi Harbor was "property" under the due process clause. Brown, 91 Hawai'i 1, 979 P.2d 586 (1999). In that case, while the individual (Duncan Brown) was absent from the state, the vessel began sinking and coming apart. 91 Hawai'i at 4-5, 979 P.2d at 589-90. The harbor authority therefore impounded it. 91 Hawai'i at 5, 979 P.2d at 590. At issue in Brown was whether the vessel was "property" under the state (and federal) constitutions, thereby entitling the vessel's owner to the due process protections of notice and an opportunity to be heard regarding his boat's impoundment. 91 Hawai'i at 3, 979 P.2d at 588. This court held the vessel was "unquestionably" property under the state (and federal) constitutions. 91 Hawai'i at 10-11, 979 P.2d at 595-96. In this case, the tents and vehicles in which the plaintiffs lived were similarly constitutionally protected property. Their chattels were as well.

Although we are not bound by federal court interpretations of federal constitutional analogs when interpreting our state constitution, we can consider federal interpretations of similar language "with reference to the wisdom of adopting those interpretations for our state." State v. Texeira, 50 Haw. 138, 142 n.2, 433 P.2d 593, 597 n.2 (1967). We note that multiple courts within the United States Court of Appeals for the Ninth

29

Circuit's geographical jurisdiction have specifically held that, where chattels are vital to the survival of houseless individuals, they are undoubtedly "property" within the meaning of the federal due process clause.  The plaintiffs cite to Lavan, a factually similar case involving sweeps of houseless individuals' encampments.  Lavan v. City of Los Angeles, 693 F.3d 1022 (9th Cir. 2012).  At issue in Lavan was a City of Los Angeles Municipal Code section (section 56.11) providing, "No person shall leave or permit to remain any merchandise, baggage or any article of personal property upon any parkway or sidewalk."  Lavan, 693 F.3d at 1026.  Nine houseless individuals sued the City under 42 U.S.C. § 1983 alleging that the City's practice of summarily seizing and destroying the unabandoned property of houseless persons living on Skid Row violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Id.  The houseless individuals filed an ex parte application for a temporary restraining order to enjoin the City from seizing and destroying their property without notice.  Id.  The United States District Court for the Central District of California granted the application and later issued a preliminary injunction barring the City from (1) seizing property on Skid Row absent an objectively reasonable belief that it is abandoned or presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; (2)

30

destroying said property without maintaining it in a secure location for 90 days first.  Id.  The City was also ordered to leave a notice in a prominent place for any property taken, advising where the property is being kept and when it may be claimed by the rightful owner.  Id.

The City appealed, arguing the seizure and destruction of houseless individuals' property does not implicate the Fourteenth Amendment.  693 F.3d at 1027.  The Ninth Circuit Court of Appeals disagreed and affirmed the district court.  Id.  It held, "Because homeless persons' unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment, the City must comport with the requirements of the Fourteenth Amendment's due process clause if it wishes to take and destroy them."  693 F.3d at 1032.  The court went on to state the appeal did not "concern any purported right to use public sidewalks as personal storage facilities."  693 F.3d at 1033.  Rather, the Ninth Circuit characterized the City's appeal as asking it "to declare that the unattended property of homeless persons is uniquely beyond the reach of the Constitution, so that the government may seize and destroy with impunity the worldly possessions of a vulnerable group in our society."  Id.  The Lavan court stated, "[T]he government may not take property like a thief in the night; rather, it must announce its intentions

and give the property owner a chance to argue against the taking."  693 F.3d at 1032.[3]

Today, we hold that unabandoned possessions of houseless persons constitute property protected by the due process clause of Article I, Section 5 of the Hawai'i Constitution.

Once a constitutionally protected property interest has been established, the next question becomes, "what specific procedures are required to protect it."  Aguiar, 55 Haw. at 495, 522 P.2d at 1266.  This court has stated due process is "not a fixed concept requiring a specific procedural course in every situation."  Sandy Beach Def. Fund v. City Council of the City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989).  Rather, due process "calls for such procedural protections as the particular situation demands," but its basic elements are

_____

[3]    Post-Lavan, various federal district courts within the Ninth Circuit have held that the chattels houseless individuals rely on for their survival constitute "property interests" within the federal due process clause.  See Mitchell v. City of Los Angeles, No. CV 16-01750 SJO (GJSx), 2016 WL 11519288, at *5 ("After the decision in Lavan, several district courts in this Circuit have echoed its reasoning, concluding that homeless individuals have a property interest in possessions, such as tents, tarps, blankets, and medications, even when these possessions are kept in a public space.  See, e.g., Sanchez v. City of Fresno, 914 F. Supp. 2d 1079, 1103 (E.D. Cal. 2012) ("If there has ever been any doubt in this Circuit that a homeless person's unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment, that doubt was put to rest by the Ninth Circuit's September 2021 Decision in Lavan v. City of Los Angeles. . . ."); Carr v. Oregon Dep't of Transp., No. 3:13-CV-02218-MO, 2014 WL 3741934, at *4 (D. Or. July 29, 2014) ("Within this most basic scope of the due process guarantee is a homeless person's ownership interest in property that she has left unattended but not abandoned.")).

notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  Id.

First, with respect to notice, "Adequate notice under the Due Process Clause has two components.  It must inform affected parties of the action about to be taken against them as well as of procedures available for challenging that action."  Brown, 91 Hawai'i at 10, 979 P.2d at 595.  The Brown case is instructive on the point of adequate notice.  As stated earlier, in Brown, the owner of a boat (a merchant marine) was absent from the state when the boat began breaking apart and sinking where it was moored at Ke'ehi Harbor.  Brown, 91 Hawai'i at 4-5, 979 P.2d at 589-90.  Pursuant to statute, the harbormaster and harbor manager declared the vessel derelict and impounded it.  91 Hawai'i at 5, 979 P.2d at 590.  The boat owner was orally informed of the boat's impoundment upon his return but went out to sea again for another month.  Id.  In the meantime, and also pursuant to statute, the harbor manager mailed notice of the impoundment to the boat's owner via certified mail (which was returned unclaimed), posted a notice on the vessel, and published notice in the Honolulu Star-Bulletin.  Id.  When the boat's owner returned again, he examined the boat in the impound area and found it had already been cut in half.  91 Hawai'i at 6, 979 P.2d at 591.  The harbor authority later gave the remnants

of the vessel, free of charge, to the company producing the movie Waterworld.  Id.

Brown filed a complaint requesting, inter alia, a declaration that his boat had been impounded in violation of his procedural due process rights.  91 Hawai'i at 7, 979 P.2d at 592. This court agreed, holding that the letter informing Brown of his boat's impoundment "made no mention of 'procedures available for challenging that action,' administrative or otherwise."  91 Hawai'i at 10, 979 P.2d at 595.  Accordingly, this court held that Brown "did not receive adequate notice regarding the impoundment" of his vessel.  Id.  Similarly, in this case, the Notice to Vacate contained no information as to how its recipients could challenge the proposed action.  Therefore, the plaintiffs received deficient notice.

Further, this court held that Brown "was never provided with an opportunity to be heard on the matter of [his] vessel's impoundment."  Id.  This court thus vacated the circuit court's judgment and remanded the case to the circuit court for entry of a judgment in Brown's favor and against the defendants, as well as a declaration that Brown's right to procedural due process was violated with respect to the impoundment and disposal of his vessel.  91 Hawai'i at 18-19, 979 P.2d at 603-04.

Similarly, in this case, the plaintiffs were never provided with an opportunity to be heard on the matter of the seizure of

34

their chattels.  Their contested case requests went completely ignored.  Even though some plaintiffs were able to meet with Mayor Victorino in person before the sweep, they were unable to stop or postpone the sweep.  This was despite the mayor's publicly (and privately) conveyed promises that the sweep would not occur until all individuals were relocated.  They were not.  This was also despite the mayor's privately conveyed reassurance to Lau that property wrapped in duct tape or caution tape would not be seized by police.  It was.  The plaintiffs were not given a meaningful opportunity to be heard prior to the seizure and disposal of their property.  Therefore, their right to procedural due process was violated.

With respect to whether a contested case hearing was required in order for the plaintiffs to be heard, the applicable test is the following:

> [In] determining the specific procedures required to comply with constitutional due process we consider and balance three factors:  (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail.

Flores, 143 Hawai'i at 126-27, 424 P.3d at 481-82 (quoting Sandy Beach Def. Fund, 70 Haw. at 378, 773 P.2d at 261).

Brown is instructive on these factors as well.  In that case, after this court determined that Brown possessed a property interest in his live-aboard vessel, we then weighed the

other three factors to determine that Brown was entitled to at least a post-impoundment hearing before losing his vessel. Brown, 91 Hawai'i at 11, 979 P.2d at 596.

First, Brown noted that the private interest at stake was "significant" because Brown's boat was his home, and "an individual's 'right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance.'" Id. Similarly, in this case, there is a "significant" privacy interest in the plaintiffs' right to maintain control over the tents and vehicles that served as their homes.

Second, in Brown, we held that "the risk created by erroneous deprivation of property through ex parte impoundment cannot be ignored." Id. The impoundment statutes required only that the vessel be determined to be unattended for 24 hours or more, and sinking or in immediate danger of sinking in a manner that obstructs a waterway or endangers life or property. Id. We noted the government was not required to adduce the evidence it had in making that determination, nor was it required to examine any potential defenses the vessel's owner may have had. Id. Similarly, in this case, the County's unchecked decision to seize and destroy the plaintiffs' personal property posed a high risk of erroneous deprivation of property.

Third, Brown acknowledged that the government had a "great interest in keeping state waters open for public use." Id. Nevertheless, we pointed out, "What may have constituted an emergency at the time the vessel was sinking in state waters simply becomes a matter of temporary storage once the vessel has been impounded." 91 Hawai'i at 12, 979 P.2d at 597. We did not consider post-impoundment hearings as posing significant fiscal or administrative burdens upon the state. Id. Therefore, Brown was entitled to the additional safeguard of a hearing. Id.

Similarly, in this case, once the vehicles and chattel were removed from the Kanahā area, they posed no further danger to public health or safety, the work of the wastewater treatment employees, or the endangered birds at Kanahā pond. Thus, a post-seizure hearing would not have significantly burdened the County. The problem, however, was that the County appears to have destroyed the personal property seized; unlike the vehicles (which were stored then disposed of), the personal property does not appear to have been stored for any time.

In fact, the circuit court made specific and unchallenged factual findings that the plaintiffs' chattels appear to have been summarily destroyed. The fact of destruction is significant in this case. In order to counter the plaintiffs' argument that their due process rights were violated, the County relies on cases that are readily distinguishable because they

involved notice and an opportunity to be heard concerning seized property that was later stored, not destroyed.  For example, in Sullivan, the United States District Court for the Northern District of California denied houseless plaintiffs' motion for a preliminary injunction against the City of San Francisco and its Bay Area Rapid Transit ("BART") District.  2017 WL 4922614, at *1.  BART police distributed notices to houseless individuals encamped on BART property.  2017 WL 4922614, at *2.  The first notice informed houseless individuals they were trespassing on BART property in violation of the California Penal Code and gave them 72 hours' notice to permanently vacate the property with their belongings.  Id.  A second notice posted days later informed the houseless individuals they were trespassing, ordered them to leave immediately, and provided contact information for two city programs that assist the homeless and provide free meals.  Id.  Once houseless individuals were removed from the property, a third notice explained where their property was stored and how to contact the storage facility to retrieve it.  Id.

The district court denied the houseless plaintiffs' motion for a preliminary injunction, stating that there was "no likelihood of success or serious questions going to the merits" of their claim that BART's actions deprived them of due process of law under the Fourteenth Amendment to the United States

Constitution. 2017 WL 4922614, at *5. The district court noted "the right to be free from trespass is one of the oldest, and most universally recognized features of the law." 2017 WL 4922614, at *4. It characterized the relief houseless plaintiffs sought as "court approval to settle indefinitely on the land of a municipal transportation district." 2017 WL 4922614, at *5.

The district court distinguished the Lavan case, upon which the houseless plaintiffs had extensively relied. Id. It explained that Lavan involved police seizure and immediate destruction of the personal property of houseless individuals without notice to them or an opportunity to object. Id. By contrast, the district court explained, BART police had given the affected houseless individuals notice that their property would be seized, 72 hours to make arrangements to move their property, and notice of the whereabouts and manner of retrieving property the BART police had seized and stored. 2017 WL 4922614, at *6. In balancing the equities, the district court further concluded, "To force BART to host the encampment would open BART to potential liability for failing to police the activities in the encampment." Id.

The County cites approvingly to Sullivan for the proposition that 72 hours' notice prior to a sweep was sufficient. The County completely ignores, however, that the

property seized in Sullivan was later stored, and the houseless

individuals affected were given information on the property's

whereabouts and how to retrieve it.  Id.

By contrast, the plaintiffs' property in this case was

destroyed.  In this case, if the County's plan was to destroy

(instead of store[4]) seized property, then the due process clause

---

[4]     The County cites to De-Occupy Honolulu for the proposition that 24
hours' notice prior to a sweep was sufficient.  2013 WL 2285100.  De-Occupy
Honolulu, however, also involved seized chattels that were later stored, with
procedures in place for the affected houseless individuals to retrieve their
property.
        In that case, the United States District Court for the District of
Hawai'i addressed whether a Revised Ordinance of Honolulu was facially
unconstitutional under, inter alia, the due process clauses of the United
States Constitution.  2013 WL 2285100, at *1.  The ordinance prohibited the
storage of personal property on public land.  Id.  It allowed the City and
County of Honolulu to impound personal property 24 hours after serving
written notice on the person storing the property or posting notice
conspicuously upon the property.  2013 WL 2285100, at *2.  The notice had to
include the location where the removed property would be stored, as well as a
statement that the impounded property would be sold or otherwise disposed of
if not claimed within 30 days of impoundment, with the property owner
responsible for all costs of removal, storage, and disposal.  Id.
        The district court noted "there is no dispute" the personal property of
the houseless individuals constituted a protected property interest.  2013 WL
2285100, at *6.  The court recognized "that a strong private interest exists
in Plaintiffs' continued ownership of their possessions, especially given
that the possessions impounded under Article 19 may be everything that a
homeless individual owns."  Id.  Nevertheless, the court determined the
houseless plaintiffs were not entitled to a pre-deprivation or post-
deprivation hearing because there were safeguards in place to prevent the
erroneous deprivation of their property.  Id.  Among those safeguards were
(1) the pre-seizure written notice provided 24 hours in advance; (2) the
post-seizure notice informing houseless individuals of the property taken and
the location where it may be retrieved, and (3) storage of the items for at
least 30 days before destruction.  Id.  The district court continued that a
hearing would not have added any additional value to prevent the erroneous
deprivation of personal property.  Id.  Further, the district court noted the
City and County's "substantial interest" in ensuring that public property was
clean, safe, and accessible for use by everyone.  Id.
        As the issue is not before us, we do not decide whether a contested
case hearing is necessary under the due process clause of Article I, Section
5 of the Hawai'i Constitution where there are procedures in place to (1)
notify houseless individuals of an upcoming sweep and whom to contact to
challenge such a sweep; (2) inventory and temporarily store the houseless
individuals' personal property seized during a sweep; and (3) notify

of the Hawai'i Constitution required a pre-deprivation hearing of some sort for Davis and Lau, who lost property in the sweep. Under the circumstances of this case, a pre-deprivation contested case hearing would have provided the process due. Thus, the circuit court properly denied the County's motion to dismiss as to Davis and Lau.

### VI.   Conclusion

We therefore affirm the circuit court's order.

| | |
|---|---|
| Bradley Sova<br>for defendants-appellants | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Jongwook Kim<br>for plaintiffs-appellees | /s/ Todd W. Eddins |
| | /s/ James S. Kawashima |
| | /s/ Shanlyn A. Park |



---

houseless individuals of where their personal property is stored and how to reclaim their property.